UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No. 25-MJ-150 |
| AMARION LANGSTON, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

Defendant Amarion Langston should be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm). The Defendant was arrested in this matter after he recklessly drove away from an attempted traffic stop in a vehicle that contained an adult passenger and a minor passenger, crashed that vehicle into a tree and guardrail, discarded a firearm and ammunition, and fled from the vehicle on foot. The Defendant engaged in this rash and dangerous conduct while on supervised release for a 2023 conviction for Attempted Robbery, Attempted Kidnapping, and Carrying a Pistol without a License (CPWL) in the Superior Court of the District of Columbia. A consideration of the factors under 18 U.S.C. § 3142(g), clearly shows that no condition or combination of conditions can reasonably assure the defendant's appearance in court or the safety of the community. *See also* Pretrial Services Report (PSR) at 1 (recommending the Defendant's pretrial detention). The United States requests that the Court consider the following points and authorities, as well as any other information presented at the detention hearing, and order the Defendant detained pending trial.

## FACTUAL BACKGROUND

On August 16, 2025, at approximately 2:38 PM, members of the United States Park Police and United States Marshals Service were patrolling the 2300 Block of Savannah Street SE when they observed a black Nissan Rogue bearing Virginia Tag TCG5470 traveling more than the posted

1

speed limit.  The vehicle was also heavily tinted such that law enforcement could not determine the number of occupants of the vehicle at the time.  Law enforcement conducted a query of the tag, which revealed that the tag belonged to an Infiniti vehicle.  As law enforcement attempted to initiate a traffic stop by activating their lights and sirens, the vehicle accelerated rapidly, nearly striking another vehicle and driving up onto the curb to flee.  Law enforcement pursued the vehicle and broadcasted its location.

Near the 1800 Block of 27th Street SE, the operator lost control of the vehicle, causing it to strike a tree on the left, side of the roadway before sliding back to the right side of the roadway and colliding with a guardrail.  The driver, later identified as the Defendant, Amarion Langston, exited the vehicle and attempted to flee on foot into the woods.  No other occupants exited the vehicle at the time.  Law enforcement pursued the Defendant on foot and issued verbal commands to stop, but the Defendant continued to run.  Shortly thereafter, law enforcement was able to catch up to the Defendant and detain him.  Law enforcement then identified the other occupants of the vehicle: Tyrese Thomas, the front-passenger seat and a young child, Witness 1, in the back seat. Below is a photograph of the resting location of the crashed vehicle and the level that the windows had been down at the time.



Law enforcement canvassed the area around the crash and located a Glock magazine, with a 10-round capacity, in the roadway near the initial crash site with the tree. Notably, the magazine baseplate and magazine spring were dislodged, and ammunition was laying on the ground next to the magazine. In all, law enforcement located eight rounds of .45 caliber ammunition. Even though the magazine was in the roadway near the crashed vehicle, the magazine did not have any damage indicating that it had been run over or crushed by a vehicle. Below is a photograph of the magazine and ammunition in the roadway.



Law enforcement then located a black .45 caliber Glock 21 handgun bearing serial number CBYC221 on the side of the roadway near the location at which the vehicle had struck the tree. The handgun was loaded with one round in the chamber; it did not contain a magazine. Law enforcement observed what appeared to be a fresh imprint in the ground in which the handgun was laying and fresh mud on its barrel. The handgun did not appear to be weathered or rusted, indicating that it had not been exposed to the elements for a significant period. Below are two photographs of where the handgun was recovered, followed by a photograph of the handgun after it had been recovered.









Law enforcement confirmed that the recovered magazine, pictured above, was compatible with the firearm and ammunition.

After the Defendant was detained and placed in handcuffs, law enforcement interviewed Tyrese Thomas.[1]  She stated to officers that she just bought the car, and it was an old license plate. She stated the Defendant acknowledged that the police were in front of them. She stated that her and the minor child were telling that the Defendant to stop the vehicle while he was driving.

Tyrese Thomas initially stated that she had no knowledge that the Defendant had a firearm in the vehicle, but she later admitted that the Glock handgun belonged to her, though she was not carrying it. She stated that she did not know why the Defendant ran from the vehicle after the crash and claimed that she had not seen a firearm stated that did not see a firearm and it was not on the Defendant.  Ms. Thomas further claimed that she had never seen the Defendant with a gun, and that the Defendant did not carry or possess guns.  Upon further investigation, the firearm had been registered to Tyrese Thomas but her registration and license to carry a pistol in the District of Columbia had been revoked in September 2024.  Finally, Ms. Thomas stated that she did not know her license and/or registration expired.  Law enforcement confirmed that the Defendant had neither a driver's license nor a license to carry a pistol in the District of Columbia.[2]

## PROCEDURAL HISTORY

On August 18, 2025, Magistrate Judge Moxila A. Upadhyaya signed a federal criminal complaint against the Defendant for the conduct described above, including a violation of 18 U.S.C. § 922(g)(1) (unlawful possession of a firearm and ammunition by a person convicted of a

---

[1] Tyrese Thomas was charged with CPWL in this case, Superior Court case no. 2025 CF2 9867.  Her preliminary hearing was held on August 20, 2025, and probable cause was found, but she was released with conditions.
[2] After arrest, Defendant stated to officers that had run because he was scared and denied having a firearm.  While being transported after arrest, Defendant stated that the firearm was registered.

crime punishable by imprisonment for a term exceeding one year). The Defendant's initial appearance was on August 19, 2025, before Magistrate Judge Matthew J. Sharbaugh. The United States requested for pretrial detention. The Court ordered Defendant held without bond pending a detention hearing set for August 22, 2025.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the United States may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and

cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

A consideration of the facts and circumstances in this case demonstrates that there are no conditions or combination of conditions that would ensure Defendant's appearance, and the safety of the community should he be released. *See* PSR at 1. Accordingly, the Court should detain Defendant pending trial.

**I.    <u>The Nature and Circumstances of the Offense Support Detention</u>**

The first factor to be considered is the nature and circumstances of the offense charged, which weighs in favor of detention. This offense began with the Defendant's refusal to comply with law enforcement. Specifically, Defendant drove away when law enforcement tried to conduct a traffic stop of his vehicle, then ran away from officers on foot when they sought to arrest him.

When the police were finally able to bring the Defendant into custody, they located a firearm where the vehicle had struck the tree.  The firearm was located on the oppsit side of the road as Defendant's flight on foot.  The firearm was loaded with one round in the chamber.  In other words, it was primed and ready to use. The danger posed by this behavior—while already on supervised release for multiple violent felonies and a firearm offense—is exactly why the Bail Reform Act contemplates pretrial detention for this charge. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (J. McFadden) (finding that, in the context of determining the nature and circumstances of the offense, a felon "carrying a loaded firearm—especially if the carrier has a violent history, including a conviction for armed robbery—has the great potential to escalate into violence."). Defendant's lack of concern for the safety of not just the safety of law enforcement officers' and the public's safety, but also the safety of the passengers in his own vehicle is alarming

and weighs in favor of detention.

## II.    <u>The Weight of the Evidence Against the Defendant</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[3]  Although the firearm, ammunition, and magazine were not discovered on Defendant's person, and not located in Defendant's foot path, they were located by crash site with the tree. Significantly, the firearm had been previously registered to the passenger, Tyrese Thomas. The firearm, magazine, and ammunition were found were found in the roadway -- the magazine baseplate and spring were dislodged, and .45 caliber ammunition was laying on the ground  next to  the  magazine. This caliber of ammunition matched the caliber of firearm recovered. Moreover, the magazine did not have any damage indicating that it had been run over or crushed by a vehicle. This condition suggested that the magazine had been discarded recently.

Similarly, the firearm was located on the side of the roadway near the location at which the vehicle had struck the tree.  It was loaded with one round in the chamber but was missing a magazine. Law enforcement observed what appeared to be a fresh imprint in the ground where the firearm was laying and fresh mud on its barrel.  The firearm did not appear to be weathered or

---

[3]      This factor should be equally weighed. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25, 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). The Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

rusted, indicating that it had not been exposed to the elements for any significant period.

Additionally, Defendant's flight in this case, first in his vehicle, then on foot, demonstrates his consciousness of guilt. Instead of stopping, the Defendant instead rapidly accelerated the vehicle, nearly striking a motorist, then driving over a curb and down a sidewalk. Upon crashing the vehicle, the Defendant then fled into the woods to evade law enforcement. The Defendant knew he was not permitted to possess a firearm, did not want to be caught with a firearm, and tried in vain to discard the illegal weapon before police capture. This demonstrated consciousness of guilt is powerful evidence of the defendant's possession of the firearm and ammunition.

### III.  Defendant's History and Characteristics Merit Detention.

The third factor, the Defendant's history and characteristics, weighs in favor of detention.[4] As noted above, the Defendant was previously convicted in District of Columbia Superior Court case number 2022-CF3-004345 for Attempted Robbery, Attempted Kidnapping, and Carrying a Pistol Without a License.

According to the Sentencing Memorandum filed in the Superior Court matter (2022-CF3-004345), (attached), Defendant admitted to the following in connection with his guilty plea:

> Defendant Andre Latimore arranged through Instagram messages to meet with victims D.G. and B.M., purportedly to purchase designer sunglasses from them. On the morning of July 28, 2022, Defendant Latimore met the victims in front of 4900 Alabama Avenue Southeast, Washington D.C. The victims handed Defendant Latimore a pair of purple Cartier sunglasses. As Co-Defendant Latimore was looking at the sunglasses, Defendant Tyrigue Humble and Defendant Amarion Langston came out of 4900 Alabama Avenue. At that point, all three defendants produced firearms. Defendant Latimore produced a pistol out of his waistband and place it to D.G.'s head. Defendant Humble produced a pistol and placed it at D.G.'s side. Defendant Langston pulled out a rifle and placed it on D.G.'s side. Seeing

---

[4] The Government has grave concern with Defendant's conduct on pages 4 and 5 of the PSA report. This conduct shows an ongoing dangerous pattern.

12

the firearms, B.M. proceeded to get inside his vehicle, flee the scene, and flag down a Metropolitan Police Department ("MPD") officer in the 3700 block of Minnesota Avenue Southeast.

Defendant Latimore advised D.G. to walk across the street and go behind 4903 Alabama Avenue Southeast.  In the rear of 4903 Alabama Avenue, Defendants still had D.G. at gunpoint.  Defendant Latimore and Defendant Humble proceeded to go through D.G.'s pockets and took his wallet.  From that wallet, they took a Bank of America business card, a Wells Fargo debit card, a Coinbase debit card, and $280.

Defendant Latimore then produced a phone and began using it to record D.G.  Defendant Latimore smacked D.G. with an open hand multiple times. Defendant Humble pistol-whipped D.G.  Defendant Langston told D.G. he would shoot him.  Defendant Latimore told D.G. "we are going to kidnap you for the day." The defendants then proceeded to walk D.G. across a courtyard into 4900 Alabama Ave Southeast, at which time they sat him down in a landing between some stairs. Defendant Humble told D.G. to send him $1000 with his phone. Defendant Humble then took D.G.'s phone and attempted to conduct three money transfer transactions, all of which were declined.  Defendant Latimore and Defendant Langston switched guns, such that Defendant Langston was then carrying a pistol.

Meanwhile, MPD officers had responded to the address in response to the flag down report from B.M.  The Defendants and D.G. saw officers begin walking towards 4900 Alabama Ave Southeast where they were located.  Defendants ran inside an apartment and D.G. ran out of the building, as officers were entering.  He advised officers that the suspects had run upstairs.

MPD declared a barricade situation and proceeded to secure the scene and set up a perimeter around 4900 Alabama Avenue Southeast. Each Defendant eventually came out of the building, was identified as one of the robbers by D.G., and was arrested.

On April 21, 2023, the Defendant was sentenced to a total of 36 months' incarceration followed by three years of supervised release. The Defendant  has been on supervision since April 10, 2025, and committed this offense while on supervised release, less than five of months after being released from incarceration

Defendant also has a history of arrests that involve the unlawful possession of guns.  On June 23, 2020, in Prince George's County, Maryland, the Defendant was arrested for First-Degree Assault, Second-Degree Assault, Armed Robbery, Firearm Use, Theft, Unauthorized Use of a Vehicle.  Most recently, on July 2, 2025, the Defendant was arrested in the District of Columbia

for Unlawful Possession of a Firearm. Although the Defendant was not formally charged in that case, Defendant possessed a firearm as a passenger in the same Nissan Rogue in this case, driven by Tyrese Thomas. After exiting the vehicle, the Defendant discarded a black bag containing a firearm behind a dumpster. Minutes after discarding the bag, law enforcement officers ultimately found the bag and a loaded firearm inside. Just over a month later, in the instant case, the Defendant, now as the driver of the Nissan, with Tyrese Thomas, and a minor child in the back seat, recklessly fled from police and discarded a firearm.

The Defendant's history demonstrates that he has had several chances to be a law-abiding citizen, and each time, chosen to break the law. The Defendant continually disregards the law and safety, ignores law enforcement commands, and now he has failed to comply with court ordered supervision. Consequently, this factor weighs in favor of detention.

## IV.    <u>The Defendant Presents a Danger to Our Community.</u>

The fourth and final factor, the danger to any person or the community posed by the Defendant's release, similarly weighs in favor of detention. Despite knowing he was a convicted felon, the Defendant possessed a loaded firearm, with a round chambered. The state of readiness of that firearm demonstrates that Defendant was ready, willing, and able to commit another crime against members of the community. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *see also United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). Moreover, the

14

Defendant's willingness to flee from law enforcement in ways dangerous to innocent bystanders, including driving recklessly with a minor child in the back seat and ultimately crashing the vehicle, demonstrates the danger he poses to the community and to his own loved ones. Therefore, this factor heavily weighs in favor of detention.

## **CONCLUSION**

There is no condition or combination of conditions that would ensure Defendant's compliance with court-ordered release conditions.  Defendant's criminal history and offense conduct make clear, he poses a serious risk to the community.  For all the foregoing reasons, the United States respectfully requests the Court detain Defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ John P. Fucetola*
John P. Fucetola
Special Assistant United States Attorney
601 D Street NW
Washington, DC 20579
(202) 252-0849
John.Fucetola@usdoj.gov

15